315 So.2d 211 (1975)
Theo McKINNIES, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. W-459.
District Court of Appeal of Florida, First District.
June 30, 1975.
Carlton C. Maddox, of Dawson, Galant, Maddox, Sulik & Nichols, Jacksonville, for appellant.
Robert L. Shevin, Atty. Gen. and A.S. Johnston, Asst. Atty. Gen., for appellee.
RAWLS, Chief Judge.
The sole question presented by appellant on this appeal from a judgment of conviction and sentence of the crime of grand larceny is: "Did the trial court err in holding the witness, Mike Little, competent to testify?"
The cast in this real life drama is composed of three people, viz: Mike Little, a mentally retarded 16 year old boy; Theo McKinnies, Jr., appellant, who is the owner of a janitorial service, which provides such service for a Red Lobster restaurant in Jacksonville, Florida, and Larry D. Hinton, *212 manager of the restaurant. The grand larceny was alleged to have been accomplished by McKinnies giving Mike his car keys and inducing Mike to remove a box of steaks from the restaurant's freezer and placing them in McKinnies car. Mike's testimony is crucial to sustaining the conviction.
A review of the transcript of the proceedings leads us to the inescapable conclusion that the trial judge erred in finding Mike competent to testify. The answers extracted from this witness by the prosecuting attorney, trial judge, and defense counsel, through leading questions, are so confusing and contradictory as to be without probative value in a judicial proceeding which leads to the incarceration of a citizen.
Illustrative of the incompetency of the witness are the following events: On direct examination, Mike stated that he had not been working at the Red Lobster on the 9th day of July; he then answered in response to a leading question that he did work at the Red Lobster on July 9. In response to leading questions, Mike stated that he did not know how to read; had made E's in school; could not write his address; could not remember his telephone number; and was unable to spell his father's name. He did state that he could write his own name.
As to Mike's ability to understand the meaning of testifying under oath, he stated that he did not know what an oath meant. When asked "... if you tell a lie when you are on the witness stand after you swear to tell the truth, do you know what will happen to you?" He responded, "I will go to jail." Immediately thereafter, he was asked, "Do you think if you tell a lie on the witness stand, you would go to jail?", and he answered, "No Sir." When again asked "... what would happen if you told a lie on the witness stand?", he responded, "Go to jail."
Concerning the commission of the alleged crime, Mike testified that McKinnies had asked him to put the steaks in the trunk, but that he had placed them instead on the back seat. Mike stated that he did not know why he put the steaks on the back seat. In the very next breath he stated that he put the steaks on the trunk, and that he gave the keys to Hinton, the manager.[1] On cross-examination, Mike testified that he had told Hinton that McKinnies had been stealing from the restaurant. He then stated that McKinnies gave him the car keys, but that Hinton told him to get the meat and put it in McKinnies' car. He further stated that after having gotten the meat and put it in the car that he gave Hinton the car keys. In response to further questioning, Mike again testified that Hinton was the person who had given him "the stuff" to put into McKinnies car, and that after having done so he gave the keys back to Hinton.[2]
In addition to the above, it is important to note that the record reveals that during direct examination Mike was weeping. Also significant is that the record reveals that the witness, in testifying, did not at any point amplify on any question. The record of his testimony repeatedly reflects leading questions and a pattern of answering "Yes" or "No" or repeating a portion of the words asked by the questioner. The record fails to disclose any voicing by the witness of his own initiative of testimony relating to the offense.
During sentencing, the trial judge opined: "I don't believe that boy has enough sense to connive on you because he's just about as dumb, he's retarded so bad he can hardly do anything. He doesn't have enough sense to think of something like that to do and put it off on somebody."
In Bell v. State, 93 So.2d 575 (Fla. 1957), the Supreme Court held inter alia: "The prime test of testimonial competency *213 of a young child is his intelligence rather than his age... ." We are aware of the numerous decisions which accord to the trial judge a very broad discretion in determining the competency of witnesses. It is not, however, a discretion without bounds. It is a sound judicial discretion subject to appellate review. And in this case, the primary prosecutorial witness, although physically of the age of 16, was mentally unable on his own initiative to verbalize the elements of the alleged crime; could not write his own address or spell his father's name, and gave contradictory answers to leading questions concerning the obligation of an oath. The test of competency of a witness is his intelligence and ability to understand, not his age, Hall v. State, 260 So.2d 881 (2 Fla.App. 1972).
After thoroughly reviewing the transcript of the trial proceedings, we reach the inescapable conclusion that the trial judge abused his discretion in permitting the witness, Michael Little, to testify.
Reversed and remanded for a new trial.
JOHNSON and McCORD, JJ., concur.
NOTES
[1] Hinton denied that he ever saw the car keys.
[2] Hinton also denied this testimony.